**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

---

United States of America,

                Plaintiff,        Civ. No. 11-556 (RHK/LIB)

v.                              **MEMORANDUM OPINION
AND ORDER**

Eugene E. Rivetts, *et al.*,

                Defendants.

---

Martin M. Shoemaker , United States Department of Justice, Washington, D.C., for Plaintiff.

Walter Benjamin Winger, Robert P. Cunningham, Quinlivan & Hughes, PA, Saint Cloud, Minnesota, for Defendants.

---

## INTRODUCTION

This action arises from the failure of Defendants Eugene and Brenda Rivetts to satisfy tax assessments for tax years 1999, 2000, 2001, 2002, and 2005.  The Government commenced this action in March 2011, seeking to reduce those assessments to judgment and foreclose tax liens upon Defendants' property in Browerville, Minnesota.  The Government now moves for summary judgment, and for the reasons that follow the Court will grant the Motion.

## BACKGROUND

Defendants live with their son, daughter, granddaughter, and niece at their home located at 39114 County Road 17, Browerville, Minnesota.  (Mem. in Opp'n at 1.)

Eugene's parents live nearby, and Defendants and their family regularly help attend to his father's health problems. (Id. at 3.) Eugene's sister and her family also live in nearby Motley, Minnesota. (Id.) When she has to drive to St. Paul to get medical care for one of her children, Defendants help care for the other three. (Id. at 3-4.)

Throughout the tax years at issue, Defendants gambled compulsively, regularly playing slots all night at various casinos in Illinois, Indiana, Minnesota, and Wisconsin. (Id. at 4-5.) Defendants won jackpots totaling $288,750 in tax year 2001, $22,000 in tax year 2002, and $50,100 in tax year 2005. (Olson Aff. ¶ 18.) They assert that they lost almost all of this before leaving the casinos, but they maintained no daily log or record of their wins and losses. (Id. ¶ 25.) They took deductions for gambling losses in tax years 1999 and 2000, but did not report any losses to offset their jackpot winnings in 2001, 2002, and 2005. (Id. ¶ 20; see also Winger Aff., Exs. 1-5.)

The Government received Defendants' tax filings for the tax year 1999 on September 25, 2000. (Olson Decl., Ex. 1A.) Defendants owed $3,773.70 in tax liability and $81.02 in interest and late fees, of which they had paid $3,854.72 by October 19, 2000. (Id.) After reviewing W-2Gs from several casinos reporting gambling winnings (Olson Third Decl., Ex. 5A), the Government assessed an additional $577 in tax liability on August 5, 2002, and charged penalties for late payments throughout the next several years. (Id.)

This process repeated itself, with minor variations, the next year. The Government received Defendants' tax filings for tax year 2000 on October 8, 2001. (Id.

Ex. 1B.) Combined with penalties and interest, Defendants' tax liability was $3,254.18. (Id.) They paid $3,274 towards that liability, and the Government issued a refund of $19.82. (Id.) Later, the Government made additional tax assessments for tax year 2000: $11,501.09 on May 5, 2003, and $2,114.70 on October 24, 2005. (Id.) As of January 31, 2012, Defendants owed $21,404.21 in taxes, fees, and interest for tax year 2000. (Olson Decl. at 2.)

Defendants did not file taxes for tax years 2001 or 2002, and did not file their 2005 taxes until 2009.[1] (Id., Exs. 1C, 1D, and 1E.) After preparing substitute tax returns using W-2Gs from casinos that reported gambling winnings, and additional assessments, fees, and interest, the Government concluded that Defendants' tax liability as of January 31, 2012, was $200,066.34 for tax year 2001, $2,197.15 for tax year 2002, and $8,525.92 for tax year 2005. (Id. at 2.) In total, as of January 31, 2012, Defendants owed $233,551.50 in taxes, fees, and interest. (Id.)

The Government sent notices of deficiency for each tax year to Defendants at an address in Elgin, Illinois. (Olson Third Decl., Exs. 5A, 5B, 5C, 5D, and 5E.) Tax liens arose as of the dates of assessment, and the Government filed notices of these liens with the Todd County Recorder's Office. (Olson Decl. ¶ 10, Exs. 2A, 2B, 2C and 2D.) It filed the instant action in March 2011 to reduce the tax assessments to judgment and foreclose against the Browerville property to satisfy the tax liens, and it now moves for summary judgment. (Doc. No. 49.) Defendants oppose the Motion, arguing that: (1) the

---

[1] Tax years 2003 and 2004 are not at issue in this dispute.

statute of limitations prevents the Government's collection efforts for tax year 1999; (2) the Government's tax assessments were procedurally deficient for failing to provide notice to Defendants; (3) genuine issues of material fact concerning the amount of taxes actually owed preclude summary judgment; and (4) equity should prevent the Court from ordering a sale of the Browerville property. The issues have been fully briefed, the Court heard oral argument on March 30, 2012, and the Motion is now ripe for disposition.

## STANDARD OF DECISION

Summary judgment is proper if, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The moving party bears the burden of showing that the material facts in the case are undisputed. Id. at 322; Whisenhunt v. Sw. Bell Tel., 573 F.3d 565, 568 (8th Cir. 2009). The Court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party. Weitz Co., LLC v. Lloyd's of London, 574 F.3d 885, 892 (8th Cir. 2009); Carraher v. Target Corp., 503 F.3d 714, 716 (8th Cir. 2007). The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Wingate v. Gage Cnty. Sch. Dist., No. 34, 528 F.3d 1074, 1078-79 (8th Cir. 2008).

# ANALYSIS

## I.  Statute of Limitations for Tax Year 1999

Defendants argue that the statute of limitations for collecting delinquent taxes has run for their 1999 tax liability, thus preventing the Government from collecting any delinquent taxes or assessments for that tax year.  The Government may collect a tax via court proceeding so long as it initiates the proceeding within ten years of the date on which the taxes were assessed.  26 U.S.C. § 6502(a)(1).  The Government can make a supplemental assessment "whenever it is ascertained that any assessment is imperfect or incomplete in any material respect."  Id. § 6204(a).  "[T]he 'assessment' itself[,] once made, starts the running of the ten-year period within which the [Government] can commence efforts to *collect* an assessed tax."  Remington v. United States, 210 F.3d 281, 284 (5th Cir. 2000) (emphasis in original).  See also Laing v. United States, 423 U.S. 161, 170 n.13 (1976).

Here, the tax documents show that Defendants' administrative file was opened on September 25, 2000.  The Government has produced Defendants' certified IRS transcripts, showing a processing date of September 25, 2000, and an "additional tax assessed" date of August 5, 2002.  The present case was filed on March 4, 2011, less than ten years after the date of assessment.  See United States v. Hoklin, Civ. 06-2382, 2008 WL 2699732, at *5 (D. Minn. July 2, 2008) (Schiltz, J.) (concluding that the relevant date for statute of limitations purposes is the date of tax assessment, not the date the IRS created the administrative file).  According to the record, Defendants satisfied their

5

reported tax liability, and all that remains from tax year 1999 is the August 2002 assessment and its associated fees and penalties. Therefore, the Government's collection efforts for Defendants' tax year 1999 are not barred by the statute of limitations.

**II.     Notice**

Defendants argue that genuine issues of material fact exist with respect to whether the Government sent them a notice of deficiency for each assessment. They allege that they never received notice as required by the Internal Revenue Code ("the Code") for any of the tax years at issue and therefore, a dispute exists whether the Government complied with the notice requirement. The Court finds this argument unpersuasive.

Title 26 U.S.C. § 6213 provides that "no assessment of a deficiency in respect of any tax . . . and no levy or proceeding in court for its collection shall be made, begun, or prosecuted until such notice has been mailed to the taxpayer." The Code does not require actual receipt of the mailing, and a notice sent by certified mail to a taxpayer's last known address complies with the statutory requirements, even if it is returned unclaimed. Pagonis v. United States, 575 F.3d 809, 813 (8th Cir. 2009) (citing Brown v. Lethert, 360 F.2d 560, 562 (8th Cir. 1966)); 26 U.S.C. § 6212.

For tax years 1999, 2000, 2001, and 2002, Defendants' tax liabilities are based on their tax filings and separate IRS assessments. The Government sent notices to Defendants for those assessments at their last known address in Elgin, Illinois. (Olson Decl., Exs. 2A, 2B, 2C, and 2D.) Defendants have produced no facts that the Government knew that the Elgin address was incorrect when they sent the notices, and

the Court concludes that the notices of deficiency were not invalid for being sent to Defendants' former address.

With respect to tax year 2000 specifically, Defendants assert that the notice was invalid because the record does not show that the IRS "made some determination after consideration and resolution of the relevant facts." (Def.'s Supplemental Mem. in Opp'n at 2.) "[I]n the absence of clear evidence to the contrary, courts presume that [public officers] have properly discharged their official duties." United States v. Ahrens, 530 F.2d 781, 785 (8th Cir. 1976). Moreover, it is a "well-established principle that the Commissioner's determination of tax liability is entitled to a presumption of correctness and that the burden is on the taxpayer to prove that the determination is erroneous." Boles Trucking, Inc. v. United States, 77 F.3d 236, 239 (8th Cir. 1996).

Defendants argue that because the Government cannot show that the determination was made after consideration and resolution of the relevant facts, the notice was invalid and the assessment must fail. However, Defendants do not contest that they had gambling income in 2000. They are just arguing the numbers without any factual support. IRS officer Deborah Olson represents to this Court that it is IRS practice to include an explanation with the notice of deficiency, and that the explanation provided to Defendants regarding the assessment for tax year 2000 has been lost or destroyed. The Government has provided the notices of deficiency and the accompanying explanations that it sent Defendants for the other tax years in question, and nothing before the Court supports the proposition that it would not have done the same for the tax year 2000 assessment. Defendants have not overcome the presumption that the government

7

officials properly discharged their official duties, and thus the Court concludes that the notice of deficiency for tax year 2000 was valid.

Defendants' 2005 tax liability is based upon Defendants' own tax filing. For the notice requirement to apply, the "tax imposed [must exceed] . . . the amount shown as the tax by the taxpayer on his own return . . . ." 26 U.S.C. § 6211(a). "In essence, a deficiency as defined in the code is the amount of tax imposed less any amount that may have been reported by the taxpayer on his return." Laing, 423 U.S. at 173-74. For tax year 2005, the Defendants' late returns showed that they owed $4,329.00. With fees and interest, that amount has increased, but the Government is not seeking an amount greater than the amount listed on the tax return that Defendants signed and filed, plus late fees and interest. Defendants' tax liability for 2005 is not an assessment as defined by the Code, which requires separate notice to satisfy basic procedural due process; instead, it is the amount of money that Defendants admitted they owed when they filed their taxes. The account transcript provided by the Government does not, as Defendants assert, show an "additional tax assessed" line item. Defendants had notice of their delinquent 2005 tax liability. No additional notice was required. Accordingly, the Court concludes that the Government gave Defendants the notice as required by § 6213 for tax years 1999, 2000, 2001, and 2002, and they were not required to send additional notice for tax year 2005.

### III.   No Genuine Issues of Material Fact Exist

Defendants also argue that genuine issues of material fact exist such that summary judgment is inappropriate. Specifically, they assert that fact issues remain regarding (1)

the correct amount of tax liability for tax year 2000, and (2) the amount of gambling losses they can deduct for the years in question.

### a. Tax Year 2000 Liability

Defendants argue that the amount they owe for tax year 2000 is disputed because they made payments towards their 2000 tax liability that the Government has not credited to them. Defendants must show that the assessment is erroneous by a preponderance of the evidence. In re Harker, 357 F.3d 846, 849 (8th Cir. 2004).

IRS officer Deborah Olson represents to this Court that the assessment was "based on information received from third parties, such as casinos, which submitted Forms W-2G reporting withholdings and income from gambling-related activities." (Olson Decl. ¶ 7.) Defendants have offered only self-serving affidavits to rebut this. The Government has provided Defendants' 2000 IRS transcript, detailing the dates of additional tax assessment and the amount assessed. (Olson Decl., Ex. 1B.) According to this evidence and the testimony of Ms. Olson, Defendants owe $21,404.21 for tax year 2000 in tax liabilities, assessments, penalties, fees, and interest as of January 31, 2012. Defendants have offered no specific evidence establishing that this is "erroneous," thus no genuine issue of material fact exists regarding the proper amount of Defendants' liability for tax year 2000.

### b. Failure to Record Gambling Losses

Defendants also assert that genuine issues of material fact exist because they failed to claim gambling losses when they filed their taxes. They argue that their heavy gambling losses for all of the tax years in question were not accurately reflected to the

9

IRS, and therefore genuine issues of material fact exist as to what their correct tax liability should be.

"Unquestionably the burden of proof is on the taxpayer to show that the commissioner's determination is invalid." Campbell Cnty. State Bank, Inc., of Herreid, S.D. v. Comm'r, 311 F.2d 374, 379 (8th Cir. 1963) (quoting Helvering v. Taylor, 293 U.S. 507, 515 (1935)).  Again, all that Defendants have offered as proof that the Government's determination is inaccurate is an affidavit.  By their own admission, Defendants did not maintain an accurate record of gambling wins and losses.  Whatever document the Defendants might give the Court in an attempt to recall their gambling losses will be an estimate at best.  They are effectively asking the Court to discount five years of tax documents—a request that necessarily implies that they were not candid in filing their taxes for three years.  Though their candor is commendable, Defendants have failed to satisfy their burden of proof.  See United States v. Walton, No. 4:07CV01988 ERW, 2008 WL 2726939, at *3 (E.D. Mo. July 10, 2008) ("Defendant's vague and unsubstantiated assertions . . . do not demonstrate that the Assessments are erroneous." (internal quotation and citation omitted)).  Accordingly, the Court concludes that no genuine issues of material fact exist with respect to Defendants' tax liability for tax years 1999, 2000, 2001, 2002, and 2005.

### IV.   Defendants' Equity Argument

Finally, Defendants argue that the Court should exercise its equitable discretion and deny the Government's request to order a foreclosure sale of their home because of the hardship such a foreclosure would cause their extended family that live with them.

Under Sections 6321 and 6322 of the Code, "a tax lien in favor of the United States attaches to all properties and rights to property of a delinquent tax payer from the date the tax liability is assessed" and "continues until the tax liability is fully satisfied or becomes unenforceable due to lapse of time." Dean v. United States, 987 F. Supp 1160, 1163-64 (W.D. Mo. 1997). Defendants do not challenge the attachment of the liens to the Browerville property or the notice of tax liens filed with the Todd County Recorder.

Section 7403(a) of the Code provides that the Government may bring an action to foreclose its federal tax liens if a taxpayer does not satisfy them. United States v. Nat'l Bank of Commerce, 472 U.S. 713, 721 (1985). This proceeding "is by its nature a proceeding in equity," and accordingly, the Court possesses "at least a limited degree of judicial discretion" with which it can take into account both the Government's interest in collecting delinquent taxes and the possibility that innocent third parties will be unduly harmed by the collection effort. United States v. Rodgers, 461 U.S 677, 708-09 (1983). That discretion "should be exercised rigorously and sparingly, keeping in mind the Government's paramount interest in prompt and certain collection of delinquent taxes." Id. at 711.

In United States v. Bierbrauer, the Eighth Circuit considered the Supreme Court's non-exhaustive list of factors to consider in § 7403 proceedings involving property sale held jointly by a delinquent taxpayer and a non-liable third party. 936 F.2d 373 (8th Cir. 1991). There, the court ordered a judicial sale despite the fact that the taxpayer-Defendant and his wife were joint tenants. Id. at 377. Here, because both owners of the property are equally liable, Bierbrauer is only instructive rather than directly applicable.

11

See <u>United States v. Vong</u>, Civ. No. 05-2997, 2007 WL 1229341, at *3 (D. Minn. April 26, 2007) (Magnusson, J.). The important question is whether the interests of Defendants' family members are sufficient to constitute an exception to the "virtually no circumstances . . . in which it would be permissible to refuse to authorize a sale" to satisfy legally placed tax liens. <u>Rodgers</u>, 461 U.S. at 709.

Defendants share their home with several family members: a son, a daughter and granddaughter, and a niece. Eugene's parents live nearby, as do his sister and her family. Defendants argue that allowing the Government to foreclose would jeopardize the care they give Eugene's father and the help they give his sister's family. They also argue that the equitable considerations of keeping their family together and off government assistance should prevent entry of judgment for the Government.

Despite the dislocation costs and inconveniences that the Defendants' family will endure, the Government's interest here should be satisfied. Defendants' family members have no possessory or fee interest in the property. The record does not convince this Court that the inconvenience Defendants and their family will suffer is sufficient to prevent foreclosure on purely equitable grounds. Such a rule would prevent almost any foreclosures to satisfy tax liens when someone other than the delinquent taxpayer lives on the property. It is true that being removed from one's home can carry with it an inherent indignity and inequity. That indignity and inequity, though, is not sufficient to tip the scales in favor of Defendants and their family. The Government's "paramount interest in prompt and certain collection of delinquent taxes" entitles it to judgment as a matter of law.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED**:

1. The Government's Motion for Summary Judgment (Doc. No. 49) is **GRANTED**;

2. The United States is entitled to judgment against Defendants Eugene and Brenda Rivetts for unpaid federal income tax liabilities for tax years 1999, 2000, 2001, 2002, and 2005, totaling $233,551.50 as of January 31, 2012, plus interest and statutory additions according to law from January 31, 2012 until this judgment is paid;

3. The United States is entitled to foreclose its valid tax liens against Defendants for the tax years of 1999, 2000, 2001, 2002, and 2005 in the amount of $233,551.50 as of January 31, 2012, which attach to and encumber Defendants' interests in real property in Browerville, Minnesota, described as:  39114 County 17, Browerville, Minnesota; and

4. The United States is entitled to collect the liabilities previously described by selling the Property either through a real estate agent acting as a receiver or under 28 U.S.C. § 2001.  After payment of the expenses of sale and any *ad valorem*

taxes due on the property, the remaining proceeds shall be distributed to the United States to satisfy this Court's judgment.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date:  May 15, 2012						s/Richard H. Kyle
							RICHARD H. KYLE
							United States District Judge